Mr. Chief Justice Johnson delivered the opinion of the court. The case, as presented by the testimony, does not give the least pretence or color to the notion of an absolute sale of the cotton from the appellee to Derton.' But on the contrary it is quite manifest that nothing more was intended by the contracting parties than that Derton should taire the cotton, have it ginned and shipped to New Orleans, and that he should there sell it, and apply the proceeds to the satisfaction of his own debt, and also some others owed by Thurmond and then to account to him for the residue in case that any should remain after such payments. The cotton was to be delivered at the gin of the appellant and after such delivery Derton was to take charge of it, ship and sell it and to apply the proceeds in the manner already indicated. The appellee delivered the cotton at the gin in accordance with the contract, but before it was removed by Der-ton, he notified the appellant that the cotton was his and warned him not to let Derton or any one else take it away. The appellant, however, disregarded his .order and permitted Derton to take the cotton from the gin. The question now to be determined is whether the appellant by thus disregarding the appellee’s order and permitting Derton to take the cotton, has subjected himself to an action for damages. In order to arrive at a correct conclusion it will become necessary to enquire into the legal character of the contract. Was it a mere naked power to ship and. sell the cotton and account for the proceeds, or was it a power coupled with an interest ? If it belongs to the former class, the general rule is that the principal may revoke the authority of his agent at his mere pleasure. This general rule, however, is open to some exceptions. But where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is a part of a security, there unless there is an express stipulation that it shall be revocable, it is from its own nature and character in contemplation of law irrevocable, whether expressed to be so on the face of the instrument conferring the authority or not. Thus, for example, if a power of attorney to levy a fine is executed as a part of a security to a creditor, the power is irrevocable. So, if a letter of attorney to sell a ship is taken as a security upon a loan of money, it is irrevocable. So, if a principal assigns all his effects for the benefit of his creditors and gives him a power of attorney to collect and receive all debts and outstanding claims, the power is irrevocable. So, if a power of attorney to sell lands is given to a creditor to pay his debts out of the proceeds of the sale, the power is irrevocable. So, a remittance to an agent of money or goods to be delivered to a creditor in discharge of his debt, is irrevocable after the creditor has assented thereto and signified his assent to the agent. The ground of this doctrine is, that a.party shall not be at liberty to violate his own solemn engagement, or to vacate, his own security by his own wrongful act: for that would be to enable him to perpetrate a fraud on innocent persons, who had placed implicit confidence in him, which would be against the clearest principles of justice and equity. See Story’s C. on Agency, page 496 and the cases there cited. The case of Wheeler vs. Slocumb, 16 Pick. 52 et seq., is strongly in point. The facts in that case were that a man by the name of Bigelow was indebted to another by the name of Farmer, in the sum of one hundred dollars for money lent, that upon his demanding payment of his debt Bigelow produced a note for the sum of one hundred and fifty dollars, executed by himself as principal and by the defendant as security, jointly and severally, and payable to the Blockstone Bank, and requested Farmer to get it discounted, that he took the note, but before it was discounted, Bigelow absconded, leaving debts unpaid, and that immediately the defendant sent a messenger to the Bank to inquire if the note had been discounted and to request that it might not.be, that the messenger was informed by the cashier that the note had not been discounted and that under the circumstances it would not be discounted, that subsequently the note was discounted and handed to Farmer and that the note then in suit was by agreement given in discharge thereof. At the trial, before Shaw, C. J., the defence was that the note sued upon was given without consideration. Upon these facts the judge was of opinion that Bigelow had a right to deposite the note with Farmer with a power to get it discounted, for a valuable consideration ; that Farmer having received it with this authority as collateral security, to the extent of his own debt, had it for value ; that although it was not payable to himself yet that he held under a power coupled with an interest, which the defendant could not revoke by notice to the bank; that when discounted it was a binding contract on the defendant, at least to the extent of Farmers’s interest therein, and therefore that the giving it up was a good consideration for the note in suit. The supreme court, in delivering its opinion, by Wilde, J. said “ Upon the facts reported we cannot doubt that the instructions to the jury were perfectly correct and that the plaintiff is well entitled to judgment. The note sued was given for another note of hand which Farmer held payable to the President and Directors of the Block-stone Bank, in which he had an interest, and which he had a right to get discounted at the bank for his own benefit. This note was given on a good consideration; for it was given to secure his debt, and in consequence he forbore to sue Bigelow, although he did not at the time of receiving the note promise so to do. Farmer bfeing thus in possession of the note coupled with an interest and authority to get it discounted, the defendant had no right to interpose and-revoke the authority.” The case at bar is as strong in all of its features as the one just referred to. In that case the agent had a mere note, which could not posibly be of any avail to him until it should be accepted and discounted by the bank, whereas in this he had the possession of property which would with absolute certainty command the money so soon as he should get it into the market. We entertain no doubt therefore that the moment the cotton in question reached the gin of the appellant in pursuance of the contract between the appellee and Derton, it came into the possession of Derton, and that, it having been deposited with him as collateral security for his debt, coupled with an interest and an authority to dispose of it and to apply the proceeds as far as necessary to the payment of his own debt, the appellee had no right to iterpose and revoke the authority. Under this view of the law as applicable to the contract entered into between Derton and the appellee, we are satisfied that the appellant was entirely justifiable in permitting Derton to take- off the cotton, and that consequently he cannot be amenable to the ap-pellee for so doing. After the testimony was closed, Denson the defendant below and appellant in this court, moved certain • instructions, all of which were refused and others substituted by the court. The first instruction moved by the appellant was, “ That if the jury believed from the evidence that the cotton in controversy was to be, and was delivered at Denson’s gin by Thurmond and that the agreement between Derton and Thurmond was that Derton should there receive the property as a pledge and security for debts, and take and ship it to New Orleans and pay proceeds upon specified debts, and the cotton was delivered at the gin and received by Denson and was delivered to and shipped by Der-ton, the plaintiff was not entitled to recover said property or its value from Denson, but that if Derton had not properly applied the proceeds or had misconducted himself in the matter he was liable to Thurmond.” The first branch of this instruction was strictly applicable to the case as made by the testimony, and was sound in point of law, but the latter was outside of the compass of the case, as it raised the question of the liability of a stranger and the court was consequently authorized to reject it altogether. The second is, “ That a sending property to any particular place for another by agreement and a delivery to a third party to act as the bailee of the purchaser, is a deliveery in law sufficient to protect a trade where a delivery is essential.” This instruction was fully warranted by the evidence, and being in strict accordance with legal principles, it should have been given in charge to the jury. The third was, “ That the delivery of personal property by a debtor to a creditor with authority and by an agreement to sell the same and pay the debt or debts is a transfer of the property which cannot be rescinded or annulled without the assent of both parties, and the debtor has no right to sue the creditor, who acts bona fide, for the property, nor can he sue the debtor’s bailee under the same circumstances so long as the objects of the transfer are not accomplished, nor can he sue either if the objects of the transfer have been honestly carried out.” This was properly rejected for the same reason as that assigned against the first. The fourth was, “ That a subsequent confirmation, or an assent to any sale or disposition of personal property by the former owner is the same in effect as if he had originally given authority for such sale or disposition;” This instruction is good in point of law and as there was some evidence tending to prove a subsequent ratification it ought fo have been given. And the fifth and last was, “ That a power coupled with an interest in the property or right to dispose of it to pay debts to himself, cannot be revoked without the assent of the agent.” The doctrine asserted by this instruction has already been recognized and as such it ought to have been given in charge. But it is urged here that although the court may have erred in refusing some of the instructions asked by the defendant below, yet he has no cause of complaint as those given in their stead are substantially the same. This is not true in fact. There is nothing in the instructions substituted by the court that comes up to the principle asserted by the second one offered by the defendant. True it is that the second one given asserts the general doctrine that a sale and delivery of personal property vests the title in the purchaser, yet the defendant had the right, under the circumstances of this case, to have the jury informed as to what would constitute a delivery. We are clear that the judgment of the court below is erroneous and ought to be reversed. The judgment of the circuit court of Ashley county herein rendered, for errors aforesaid is therefore reversed, annulled and set aside and the cause remanded with instructions to be proceeded in according to law and not inconsistent with this opinion.